COE v. EAST & WEST R. CO. OF ALABAMA et al.

SMITH v. KELLY.

(Circuit Court, N. D. Alabama, S. D.   December 10, 1894.)

ATTORNEY'S LIEN—TO WHAT ATTACHES.

One S., a lawyer, was retained by K. and B. to protect their interest in a large number of the bonds of an insolvent railway company.  S. rendered important services, which were fully successful.  The road was ordered to be sold under the decree in a foreclosure suit, and, before the sale, S. was discharged by K. and B., and the discharge recognized by the court, reserving S.'s right to have his compensation fixed and the extent of his lien declared.  At the foreclosure sale, K. bought the road.  S. afterwards applied to have his compensation fixed and lien declared.  *Held*, that S. had a lien upon the bonds of his clients and upon any portion of the proceeds of the sale applicable to their payment, but that his lien did not extend to the property of the road in the hands of K. after his purchase thereof, even though the purchase price was insufficient, after paying costs and receiver's certificates issued by order of the court, to leave any balance applicable to the bonds.

This was a suit by George S. Coe, as substituted trustee, against the East & West Railroad Company of Alabama and others, for the foreclosure of a mortgage.  Frank Sullivan Smith, formerly solicitor for the defendants Eugene Kelly and John Byrne, filed his intervening petition, asking to have his compensation fixed and the lien thereof declared.  The petition was referred to F. S. Ferguson, as special master, who filed a report, to which exceptions were taken. The report is as follows:

To the Honorable, the Judges of said Court:

In obedience to the order of the court, dated May 19, 1893, I gave due notice to the parties to this intervention that I would take the testimony therein at No. 35 William street, New York, on the 19th day of June, 1893, which time and place was consented to by the intervener and respondent.  Accordingly, I attended at said time and place, and the parties duly appeared before me in person and by their counsel.  Mr. Denegre, in behalf of the respondent, objected to the taking of the testimony, or to any proceedings under the order of reference of May 19, 1893, because—First. the court had no jurisdiction to make such order; and, second, because of the want of proper parties defendant, Mr. Kelly being made the sole defendant, whereas John Byrne should have been joined with him.  I stated to counsel then, and now report, that I had no authority to determine a plea to the jurisdiction of the court, or to pass upon the legal sufficiency of or to grant an amendment to any pleadings sent to me by the court.  Doubtless, the objection was made by counsel in order that his client might not be held to have waived it by silence.  For this purpose, and no other, I permitted the objection to be entered as a part of the proceedings before me, and now report that it was made before any of the testimony was taken.  A careful study of the order of reference has convinced me that the court has already ascertained that the relation of solicitor and client did exist between the intervener, Frank Sullivan Smith, Esq., and the respondent, Mr. Eugene Kelly, in the cases of the foreclosure

suit against the East & West Railroad Company of Alabama, and the dependent and auxiliary bill of Grant Brothers et al. against the same, and that the duty devolved upon me by the order was—First, to ascertain and report what would be a reasonable compensation for Mr. Smith for his services as such solicitor; and, second, what lien, if any, he had on the property of the defendant railroad company, or on the proceeds of the sale therefor, for the payment of such compensation. But, if this construction of the order is erroneous, I proceed now to ascertain from all the testimony before me whether or not Mr. Smith was employed by Eugene Kelly and John Byrne as their solicitor to represent their joint interest in and to nine hundred and sixty-six of the first consolidated mortgage bonds of the defendant railroad company, which they had acquired from the Brownings and West by the contract of May 11, 1888, and to what extent he did represent them, or either of them, as such solicitor in the foreclosure suit and in the auxiliary suit of Grant Brothers, by which it was sought to have said nine hundred and sixty-six bonds declared fraudulent and void.

I discard from my consideration, as not pertinent to this issue, all of the testimony as to the services Mr. Smith rendered to certain parties and committees from December, 1887, up to the time of the filing of the foreclosure bill, to wit, June 2, 1888. Those parties and committees were trying to devise a plan to avoid litigation, by a prompt reorganization of the defendant railroad company, and, doubtless, Mr. Smith rendered them valuable service; but, under the order of reference, it could not be considered by me in this behalf, or constitute any part of the service to be charged against the respondent. The testimony clearly shows that the foreclosure suit was begun at the instance of Eugene Kelly and John Byrne, as the holders of the majority of the first consolidated mortgage bonds of the East & West Railroad Company of Alabama. The mortgage of December 1, 1886, securing said bonds, provided that on the happening of certain events, such as failure to pay interest, etc., and a demand in writing of a certain number in value, of the holders of said bonds, the trustee should institute proceedings to foreclose it. The railroad company failed to pay the interest on said bonds due the 1st of December, 1887, and, upon such failure, Eugene Kelly and John Byrne, as the holders of said bonds to the amount, in value, of nine hundred and sixteen thousand dollars, and Eugene Kelly, as the holder of said bonds to the amount, in value, of ninety thousand dollars, demanded, in writing, that the trustee should at once proceed to foreclose the mortgage. This writing is dated May 18, 1888, and was prepared by Mr. Smith, the intervener, at the request of Eugene Kelly and John Byrne. He (Mr. Smith) delivered this written demand to the trustee, the American Loan & Trust Company, and thereupon the trustee instructed its counsel, Robert Ludlow Fowler, Esq., to take the necessary legal steps to foreclose the mortgage, which instruction he promptly obeyed. He prepared the bill, receiving aid from Mr. Smith in the way of the collation of the facts necessary thereto, and, in company with Mr. Smith, came to Birmingham, Alabama, to file it in court. Having reached Birmingham, Mr. Fowler delayed filing the bill a day or two, in order to ascertain whether or not the railroad company had failed to pay the interest due on the 1st of June, 1888, and, having been duly informed of the fact of such failure, filed the bill on June 2, 1888. This action on the part of Eugene Kelly and John Byrne, and each of them, it seems to me, was an employment of Mr. Smith to represent them, and each of them, in the foreclosure suit, and threw on him the responsibility of upholding the genuineness and validity of the bonds held by them, in that suit. Some weeks later, the Grant Brothers and others filed a dependent and auxiliary bill, in which it was charged that the bonds held by Kelly and Byrne, and which they had obtained from the Brownings and West, as above shown, were fraudulent and void. Mr. Smith testifies—and no one contradicts him—that he was duly employed by Messrs. Kelly and Byrne to represent them in that suit, and contend for the validity of the Brownings and West bonds under the terms of the contract of May 11, 1888. This he did by preparing and filing their answer to the said bill, and by attending all the sittings of the special master, acting as examiner, to take the testimony by examining and cross-examining witnesses, by preparing a brief, and arguing the case before

the circuit court at New Orleans, and, on appeal, before the circuit court of appeals. During all this time—a period of nearly five years—he testifies that he had frequent interviews with Mr. Kelly, and informed him of the progress of the litigation, and of his own actions therein as Mr. Kelly's solicitor. From time to time during this period, he testifies, Mr. Kelly paid him various amounts of money towards the expenses of the suit and his own compensation. Hotchkiss v. Le Roy, 9 Johns. 142; Burghart v. Gardner, 3 Barb. 64; Fore v. Chandler, 24 Tex. 146. In view of these undisputed facts, I find and report that Mr. Smith was duly retained by Eugene Kelly and John Byrne, and each of them, to represent their joint and individual interests in the East & West Railroad bonds held by them, in the suit for foreclosure of the mortgage, and in the suit instituted by Grant Brothers et al. I am strengthened in this conclusion by the failure of Mr. Kelly to testify to a different state of facts. It is true that on the 6th of April, 1893, he filed an affidavit in this court to the effect that he had never employed Mr. Smith as his solicitor in the East & West Railroad litigation, and that Mr. Smith had no authority to appear for him therein; but this affidavit is purely ex parte, extrajudicial, and has been stricken from the files of the court by the very order referring this controversy to me. Therefore, I cannot consider or give it any weight whatever, no matter in what shape it may be presented to me. I cannot avoid the legal conclusion that when a party has an opportunity to dispute the testimony given against him, and fails to do so, he admits its truth, unless falsehood is apparent on the face of it. More than this, as late as January, 1893, Mr. Kelly wrote to Major John Byrne, his partner, or the joint owner with him in and to the bonds in litigation, requesting him to have Mr. Smith send in "our bill," in order that he might be paid that month; thus admitting a liability on his part to Mr. Smith.

But it is contended on the part of Mr. Kelly that, in the spring of 1889, the court authorized the issuance of receiver's certificates constituting a lien on the railroad property superior to that of the bonds; that Mr. Kelly purchased a very large portion of these certificates; and that thenceforward his interest as a bondholder was antagonistic to his interest as a holder of receiver's certificates, and, therefore, Mr. Smith was precluded from further service as his solicitor in the litigation. The receiver's certificates, to the amount of six hundred and fifty thousand dollars, were authorized to be issued by the court in March, 1889, by and with the consent of all the bondholders. This was done in order to raise money to widen the gauge of the railroad, and for its betterment generally, and, indeed, to keep it a "going concern." At Mr. Kelly's special request, the order was so framed as to require the receiver to offer the certificates first and preferably to the bondholders in the proportion of their holdings of the bonds. It is to be presumed that the receiver did so offer them, for such is the order, and it was his duty to obey it. The records show that these certificates never went out of the family of the litigants, as no one purchased them from the receiver except bondholders, to wit, Eugene Kelly, the American Loan & Trust Company, Drexel, Morgan & Co., De Coppett & Co., and Reuben L. Fox. Whether or not these parties took the certificates in proportion to their holdings of the bonds the testimony is silent; but it is certain that they obtained whatever of advantage there was in the ownership of them over the bondholders who did not accept the terms of the order by which they were issued. As above stated, these certificates were endowed with a lien superior to that of the bondholders; and this by their unanimous consent. Superiority of lien by no means involves the idea of an antagonism of lien; the very term imports that there is no hostility between them. In this case the purchasers of the receiver's certificates became at once the wards of the court, and it was the duty of the court to protect their interests, without putting them to the expense of employing counsel to look after and guard it. They needed no counsel. Their certificates were never in dispute. Their absolute superiority as liens on the property was never questioned, and the court was most careful to secure the rights of the holders of them in its decree of foreclosure and sale. Beach, Rec. § 402 et ante.

How, then, can it be reasonably contended that Mr. Kelly was the owner of antagonistic liens, and that, therefore, as a lawyer, Mr. Smith should have

abandoned his employment to maintain the validity of the Browning and West bonds? The interest of Messrs. Kelly and Byrne in and to said bonds was equal. Mr. Smith represented both and each of these clients, and, in doing so, it was scarcely possible that he could advocate the interest of one without advocating the interest of the other. The certificate holders, as such, never disputed the validity of any of the bonds; and nowhere in the pleadings does it appear that Mr. Kelly, as a bondholder, disputed the superior lien of the certificates, or, as a certificate holder, the secondary lien of all the bonds. As I understand the testimony, Mr. Smith never pretended to represent Mr. Kelly as a holder of the receiver's certificates,—a most useless labor,—but that he did appear for and represent the interest of Mr. Kelly and Major Byrne as bondholders, and nothing else. In doing so, under all the facts in evidence before me, I cannot see in what particular he has violated the canons of professional ethics, or any duty that he owed to his client or to the court. To Mr. Kelly, as a certificate holder, he owed no duty whatever. In that interest the court was Mr. Kelly's guardian. To Mr. Kelly, as a bondholder, he did owe the duty of asserting and maintaining the genuineness and validity of the bonds obtained by him and Major Byrne from the Brownings and West, which was assailed by the averments of the Grant Brothers' bill. This duty he discharged with a zeal, fidelity, and ability which lawyers should always give to the interest of their clients, and with a success that all lawyers strive for and are proud to attain.

Again, it is contended on the part of Mr. Kelly that in April or November, 1892, he discharged Mr. Smith as his solicitor, and that he (Mr. Smith) has no right to compensation after the time of that discharge; that Mr. Smith should have ceased to represent Mr. Kelly from that time. As a matter of taste, this, perhaps, should have been his course; but the authorities lay the law down differently. I quote from Weeks on Attorneys (2d Ed., § 250): "A party has no right arbitrarily to change his attorney without paying the costs earned; and the original attorney is not bound to consent to a substitution, or deliver the papers upon which he has a lien, until the amount of his just demands are ascertained by a court or a reference, and paid." This view of the law is upheld by the cases of Sloo v. Law, 4 Blatchf. 268, Fed. Cas. No. 12,958, and Wilkinson v. Tilden, 14 Fed. 778.

As to the value of the services rendered by Mr. Smith, three witnesses have testified. Gov. Hoadley, a lawyer of wide and varied experience in such cases, having "looked" at the book of testimony in the Grant Brothers' case, and heard the statement of Mr. Smith as to the time involved and the nature of the litigation, and having read his brief as filed in the circuit court and in the court of appeals, fixes the sum of twenty-five thousand dollars as a reasonable fee, in addition to his expenses. Mr. Green, a lawyer of much experience in railroad litigation, having read Mr. Smith's direct examination before me, fixes the fee at five thousand dollars, or, at the highest, five thousand five hundred dollars. Mr. Robert Ludlow Fowler, who was the solicitor for the complainant throughout the entire foreclosure suit, and a witness to the services of Mr. Smith in the courts and before the special master, and is thoroughly familiar with the whole history of the litigation, and entirely competent otherwise, fixes the sum of eighteen thousand or twenty thousand dollars as a proper and reasonable fee, in addition to his disbursements for necessary traveling expenses. Of the testimony of these witnesses, the most satisfactory to my mind is that of Mr. Fowler. Gov. Hoadley and Mr. Green testify from the standpoint of the hypothesis, which is seldom, if ever, certain and complete in its statement of facts. Mr. Fowler testifies as an eye witness, so to speak, to substantially all of Mr. Smith's services, and fixes the fee with an intelligent appreciation of their importance and value to his clients, whoever these clients may have been. I therefore find and report that, for his services as solicitor for Eugene Kelly in the foreclosure suit and in the Grant Brothers' suit, Frank Sullivan Smith should be allowed the sum of twenty thousand dollars, and also his necessary disbursements, as shown by his testimony to be the sum of one thousand five hundred and five dollars and eighty-one cents. From the aggregate of these two sums should be deducted the amount heretofore paid him by Mr. Kelly, as shown by Mr. Smith's testimony, to wit, the sum of two thousand five hundred and five dollars and

fifty cents, which would leave a balance of nineteen thousand dollars and thirty-one cents due to Mr. Smith.

The next and most difficult question submitted to me by the order of reference is, what lien, if any, has the intervener upon the property of the East & West Railroad Company of Alabama, or the fund in court arising from the sale thereof? I have had much difficulty in framing an answer to this question which is satisfactory to my mind, but that difficulty arose mainly from the fact that, in my first reasonings, I mistook the result of the litigation for its cause. The general rule is that an attorney at law who is employed to prosecute a demand has a lien upon any judgment or recovery obtained through his services for fees or compensation due him therefor. All the authorities are clear as to the existence of this lien, but there is great contrariety of opinion as to the proper remedy for its enforcement. It seems, however, that, as long as the parties are under the control of the court, it has the power and will find the way to execute it. Mansfield v. Dorland, 2 Cal. 507; Pinder v. Morris, 3 Caines, 165; Andrews v. Morse, 12 Conn. 444; Walker v. Sargeant, 14 Vt. 247; Adam v. Fox, 40 Barb. 442. He has a lien upon his client's papers that came into his possession in the course of his professional employment (Ex parte Russell, 1 How. Pr. 149); also upon a note deposited with him for collection or suit (Howard v. Osceola, 22 Wis. 453; Stewart v. Flowers, 44 Miss. 513); also upon a bond or mortgage in his hands for foreclosure (Bank v. Todd, 52 N. Y. 489). This is the law substantially in Alabama. Ex parte Lehman, 59 Ala. 631; Jackson v. Clopton, 66 Ala. 29; Warfield v. Campbell, 38 Ala. 527; Royall v. McKenzie, 25 Ala. 363; In re Tallahassee Manuf'g Co., 64 Ala. 567; Weaver v. Cooper, 73 Ala. 318; Moseley v. Norman, 74 Ala. 422.

The first question to be solved is, what was the subject-matter of the litigation in the foreclosure suit and the Grant Brothers' bill? Messrs. Kelly and Byrne placed their nine hundred and sixty-six bonds in the hands of Mr. Smith, as their solicitor, for collection, by a foreclosure of the mortgage given to secure them. The foreclosure suit was instituted on their demand. The Grant Brothers' bill attacked the validity of these bonds, but, in legal effect, the foreclosure suit and the Grant Brothers' suit constituted one litigation concerning the same subject-matter. The objections to these bonds could have been taken in the foreclosure suit before the master when he was directed to list the claims against the defendant railroad company, and their validity tested without the filing of a separate bill. Mr. Smith's lien as solicitor attached to these bonds from the moment of his employment; and, when they were declared valid and embraced in the decree, this lien was fixed on that decree; and, when the mortgaged property was sold, it was transferred to that property, even had it been purchased by a stranger to the record. Certainly, it cannot be contended that the receiver's certificates constituted the subject-matter of the litigation. They were issued as a mere incident of that litigation to preserve the property and improve it. The foreclosure bill sought to have a sale of the mortgaged property for the payment of the bonds secured by the mortgage. The Grant Brothers' bill challenged the validity of nine hundred and sixty-six of those bonds held by Eugene Kelly and John Byrne. Mr. Smith, as solicitor for these parties, advocated the validity of these bonds as just and legal securities under the mortgage; and the decree of the court declared them to be of equal validity with all the other bonds, and ordered a sale of the property for the payment thereof. The property was not sold to pay receiver's certificates, but to pay the bonds which were secured by the mortgage then foreclosed. True, the decree required the purchaser to assume the payment of the certificates, just as it required him to pay the costs of the court; but that did not transform them into the subject-matter of the original suit any more than it did the costs of the clerk or the marshal of the court. The bonds secured by the mortgage, and nothing else, constituted this subject-matter; and the property of the defendant railroad company was the thing—the corpus—upon which the lien of the bonds was declared, and sought to be made fruitful by sale. That this property did not sell for a sum sufficient to pay the costs, certificates, and bonds is no fault of the counsel, any more than it is of the court of which he is an officer. And here, it seems to me, is the fallacy of Mr. Denegre's argu-

ment in favor of the respondent. The lien may exist without a possibility of its enforcement to fruition. It is true the bonds took nothing by the sale, but their lien existed nevertheless. Suppose the property had been sold for two million dollars in cash; less than half that amount would have paid all the costs, preferred claims, and the receiver's certificates, and the residue of over one million dollars would have been apportioned to the payment of the bonds. On these bonds, nine hundred and sixty-six thousand dollars, in value, were ascertained to belong to Eugene Kelly and John Byrne. (See master's report, September 6, 1892.) Mr. Smith represented the holders of these bonds throughout the entire litigation, and was successful in having them declared of equal validity with the other bonds. Can it be contended in the supposed case that these bonds of Kelly and Byrne would not have received their just proportion of the proceeds of the sale after paying costs, preferred claims, and receiver's certificates? Can it be contended that, in that event, Mr. Smith would have no lien as solicitor upon these bonds, or upon their proportion of the proceeds of the sale, for his fees and disbursements? Can a failure of property to bring a high price at judicial sale alter the principles of law? I think not. Mr. Smith fully discharged his duty to his clients when he contended for and obtained a decree recognizing the validity of their bonds, and ordering a sale of the property for their payment. He had a lien on the bonds for his compensation during the litigation, and, when they were merged in the decree of sale as legal and valid securities, that lien at once attached itself to the property to be sold. It would be a mockery of justice to declare that that lien was lost and destroyed because the proceeds of the sale were insufficient to pay any portion of the bonds. Ex parte Plitt, 2 Wall. Jr. 453, Fed. Cas. No. 11,228; McDonald v. Napier, 14 Ga. 89. I find and report, as matter of law, that the intervener, Frank Sullivan Smith, Esq., has a lien upon the property, rights, and franchises of the East & West Railroad Company of Alabama, recently sold to Eugene Kelly, under the decree of this court, for his services as solicitor for said Eugene Kelly, to the amount of twenty thousand dollars, and his disbursements for necessary expenses, to the additional amount of one thousand five hundred and five dollars and eighty-one cents, less the amount heretofore paid him on account, to wit, the sum of two thousand five hundred and five dollars and fifty cents; leaving, as a balance due him, the sum of nineteen thousand dollars and thirty-one cents.

It will be seen from the foregoing that Mr. Smith was the solicitor of Eugene Kelly and John Byrne as joint owners of the nine hundred and sixty-six first consolidated mortgage bonds of the defendant railroad company, and, as such, earned the compensation herein reported due him. In what proportion these nine hundred and sixty-six bonds were owned by Messrs. Kelly and Byrne the evidence does not inform me with accuracy; but, from all the testimony relating thereto, I find and report that their interest in said bonds were equal, share and share alike, and that each of them is bound for the payment of the fee and expenses of their solicitor.

Treating this intervention as a proceeding in personam, I find and report that Mr. Kelly should pay to Mr. Smith the sum of nine thousand five hundred and 15-100 dollars ($9,500.15), and that Major John Byrne should be held to pay the balance of the sum herein reported as due Mr. Smith. Mr. Kelly became the purchaser of the property upon which I have reported Mr. Smith has a lien, and a deed thereto has been duly executed and delivered to him, through his attorney, Mr. Walter Denegre. It would be useless to attempt to apportion the liability of Messrs. Kelly and Byrne to Mr. Smith for the compensation herein found and reported due him, if this intervention is a proceeding in rem; that is a matter for settlement between them. The order of reference, as I understand it, calls for a report from me in either and both views of the case. To the best of my ability I have discharged that duty.

I file with this report the original of the testimony upon which it is predicated.

All of which is respectfully submitted.

    [Signed]                 F. S. Ferguson, Special Master.

Alexander C. King, for intervener Smith.
Walter D. Denegre, for respondent Kelly.

PARDEE, Circuit Judge.    The matter of the intervention of Frank Sullivan Smith, heretofore solicitor for Eugene Kelly and John Byrne in the main case and in the dependent suit of Grant Bros. v. Brownings, Kelly, and Byrne, and others, wherein intervener, Smith, having been discharged as solicitor for the said Eugene Kelly pending the litigation, petitions the court to fix and assess the amount of his compensation as against Eugene Kelly, and determine the extent of his lien, has been submitted on exceptions to the report of the special master.    The very comprehensive and well-considered report of the special master answers all the important exceptions taken thereto, save and except the one which objects to the finding that the intervener has a lien for his compensation, as the solicitor for Kelly and Byrne, upon the property, rights, and franchises of the East & West Railroad of Alabama.

The undisputed facts seem to be that the intervener, Smith, was employed in his professional capacity to represent Messrs. Kelly and Byrne in protecting and defending their very large bonded interest in the East & West Railroad of Alabama, amounting to 966 bonds out of a total of 1,750; that as solicitor, so employed, he rendered valuable services, and made outlays for expenses, in protecting the said bonded interest, and was so far successful therein as to secure a full recognition of such interest as against the very serious attacks made against its validity.    After defending the suit of Grant Bros. v. Brownings et al. successfully, and after the decree of foreclosure had been entered in the main case in favor of all the bonded interest, including that owned and controlled by Kelly and Byrne, but before a sale of the railroad property under the decree of foreclosure, Kelly discharged Smith as his solicitor, and the discharge was recognized by the court, reserving to Smith the right to have his compensation fixed and the extent of his lien declared.    Under the authorities cited by the special master, and in the very able briefs submitted to me, it is clear that, when Solicitor Smith was discharged, he was entitled to be paid for his services by his client Kelly, and, in default thereof, to have the amount due him ascertained by the court, with recognition of a lien upon the interest which Kelly had in the subject-matter of the litigation.    It is found by the special master, and not disputed, that the extent of the interest represented by Solicitor Smith in the litigation in the main and dependent suit was the 966 bonds owned and controlled by Kelly and Byrne.    At no time did Solicitor Smith claim to represent Mr. Kelly in any interest in the receiver's certificates; nor in any other interest outside of the 966 bonds.    Mr. Smith's lien for compensation for his services was, in equity, fixed and determined at the time he was discharged, and it is difficult to see how any subsequent action of Mr. Kelly in purchasing the East & West Railroad of Alabama could enlarge or defeat the lien. Even if Mr. Kelly had purchased the railroad property as a bond-

holder, representing the said 966 bonds, Mr. Smith's lien would not thereby have been enlarged and extended to the railroad property, except so far as the 966 bonds were by such purchase merged into the railroad property. As a matter of fact,—undisputed in this record,—Mr. Kelly purchased the East & West Railroad of Alabama as any stranger might have done. Under the terms of the decree of foreclosure, the sale was of the railroad property, free and clear of all incumbrances save for receiver's certificates and obligations, and thereby all lien of the mortgage bonds was divested as to the railroad property, and remitted to the funds derived from the sale.

A decree will be entered in the case amending the special master's report so as to deny a lien in favor of Frank Sullivan Smith upon the property, rights, and franchises of the East & West Railroad Company of Alabama, but recognizing his lien upon Mr. Kelly's interest in the 966 first consolidated mortgage bonds of the East & West Railroad Company of Alabama, claimed in the litigation to have been owned by Kelly and Byrne; and that, as amended, all exceptions be overruled, and the special master's report be approved and confirmed.